# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| DARREN BENJAMIN | CIVIL ACTION NO. 09-1116 |
| VS. | SECTION P |
| SHERIFF MICHAEL NEUSTROM, ET AL. | JUDGE HAIK |
| | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Darren Benjamin, proceeding in *forma pauperis*, filed the instant

civil rights complaint pursuant to 42 U.S.C. § 1983 on July 7, 2009.  When he filed this

complaint, plaintiff was incarcerated in the Lafayette Parish Correctional Center (LPCC).

However, on October 8, 2009, plaintiff provided the court with a residential address,

suggesting that he is no longer in custody.  Plaintiff complains that he was denied

appropriate medical care during the time he was incarcerated at LPCC.  He names Sheriff

Michael Neustrom, the "director" of LPCC, LPCC Medical Director Manwell Gonzalez,

LPCC Nurses K. Hall, Gladies, Stefanile, LPCC Deputies Brown, Shawn Wright, Elder,

Lucy, McAllister and Strother, as well as unknown "medical staff" of UMC (University

Medical Center). Plaintiff  prays for injunctive relief (that his medical records be released,

that he obtain immediate and proper medical treatment, that he be informed of a "proper

diagnosis," and that further attempts not to disclose his condition be prohibited) and

compensatory and punitive damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court. For the following reasons it is recommended that plaintiff's complaint – insofar as he seeks monetary damages – be **DISMISSED WITH PREJUDICE** as frivolous and that his complaint – insofar as he seeks injunctive relief – be **DISMISSED WITH PREJUDICE** as moot.

### *Background*

Plaintiff was incarcerated at the LPCC from some time prior to August 2007 through some time prior to October 8, 2009, the date plaintiff advised the Court of his current residential address.  In his Complaint, plaintiff alleges that in August 2007, plaintiff complained to the LPCC Medical Department about chest pain.  He was apparently prescribed blood pressure medication, but according to plaintiff, the medication was ineffective so that "some night[s]" he was taken to the hospital. [rec. doc. 1, ¶ IV, p. 5].

Sometime in 2008, plaintiff was sent to the hospital. An x-ray examination revealed a "black spot" on plaintiff's lungs and he was advised of its existence. According to plaintiff, this "black spot" had previously been observed sometime in 2007 but the physicians "refuse[d] to tell [him] anything about it for 14 months. . . ." [*Id.*].

On January 29, 2009, plaintiff complained of chest pains to Deputy Wright. Wright advised plaintiff that he would return to check on him.  An unspecified period of

time passed and plaintiff advised Deputy Lucy that he was having chest pain, but she did nothing.  Plaintiff again alerted corrections staff, but his plea was ignored.  Then, Deputy Wright returned to plaintiff's cell, apologized for the delay and explained that he had forgotten about plaintiff's request for assistance. Wright then sent plaintiff to the hospital for examination and treatment.[1]  [*Id*. at 6].

Plaintiff complained again in April, 2009 about chest pain and the receipt of his high blood pressure medication. [2]  Thereafter, on June 6, 2009, plaintiff advised Deputy Jackson that he was again experiencing chest pain along with head ache, and numbness in the toes on his left foot.  Nurse Hall overheard his complaint and advised plaintiff that the symptoms were caused by gas. Nurse Hall returned three hours later and asked plaintiff to try some medication to relieve the gas.  Plaintiff disagreed with Hall's diagnosis.  Nurse Hall then took plaintiff's blood pressure and, since it was high, she concluded that plaintiff's pain was not gas related.  Plaintiff filed a grievance complaining about Hall's misdiagnosis. [*Id*. at 7].[3]

---

[1] Plaintiff submitted a grievance; it was considered unfounded in light of the fact that plaintiff was taken to the hospital that evening. [rec. doc. 1, p. 18].

[2] In April 2009, plaintiff submitted two grievances concerning medical care. In the first one dated April 4, 2009, plaintiff complained that Deputy Elder ignored plaintiff's complaint of chest pain. Plaintiff demanded that Elder be terminated from his employment. [rec. doc. 1, p. 17].  In two other grievances dated April 30, 2009, plaintiff complained that he needed his medication at 8:30 p.m. and that  Nurse Cynthia allegedly wrote down that she had given plaintiff his medication, when she allegedly had not; at 11:30 p.m. plaintiff complained that he asked Deputy McAllister and Deputy Strother  cursed him when he requested an opportunity to speak with the supervisor about the problem. [rec. doc. 1, pp. 15-16].

[3] *See* rec. doc. 1, p. 14 – ARP grievance dated June 6, 2009. The medical staff determined that the grievance was unfounded and noted that Nurse Hall had attempted to give plaintiff his blood pressure medication

On June 12, 2009, Deputy Broussard  transported plaintiff to the hospital. Plaintiff was advised that diagnostic examinations revealed the presence of a black spot on his chest, around his heart, and on his lungs.  Plaintiff was advised that these findings could indicate cancer and that plaintiff could be dead within a year.  [*Id*.].

According to plaintiff, these facts demonstrate deliberate indifference on the part of the medical department and other named defendants who demonstrated "nonchalant attitudes, jokes, negligence, malpractice, etc."  Plaintiff alleges that his condition is now very serious and that he experiences overwhelming and unbearable pain. [*Id*. at 8].

In an amended complaint, plaintiff adds the following factual allegations.  On July 10, 2009, plaintiff was examined by an un-named physician at LPCC, who, along with Deputy Lee,  "disrespected" plaintiff . [rec. doc. 11, p. 1]

On August 5, 2009, plaintiff complained to Deputy Stoute of chest pains and difficulty breathing.  Stoute accompanied plaintiff to the LPCC medical department where Nurse Broussard obtained a blood pressure reading.  Broussard advised plaintiff that his blood pressure was high, but not high enough to warrant hospitalization. Plaintiff asked to speak to Sergeant  Natt, but his request was refused.  Plaintiff  was placed in administrative segregation because Deputy Renee told Sergeant Scarla that plaintiff didn't

---

(Clonidine) but plaintiff refused to swallow it. The response also indicated that plaintiff received care from the night nurse on June 7, 2009 and that he went to an appointment at a cardiology clinic on June 12, 2009.

(Clonidine – the medication mentioned in the response to plaintiff's grievance – is one of a class of medications called centrally acting alpha-agonist hypotensive agents. It works by decreasing the heart rate and relaxing the blood vessels so that blood can flow more easily through the body. See <u>Medline Plus</u>, Drugs & Supplements at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682243.html)

want to go back in the pod.[4]

On September 10, 2009, plaintiff complained to un-named deputies about his "medical problem", but they refused to listen.  Instead, they  locked him in his "hot cell", despite plaintiff's complaints that he gets overheated.

On September 29, 2009, plaintiff's request for a hospital visit, to obtain more information about the spot on his lung, was denied.

On October 1, 2009, plaintiff complained to Deputy Jessica about chest pain, but Deputy Dugas refused to call the medical department.

Sometime between October 1, 2009 and October 8, 2009 plaintiff was released from custody at the LPCC to reside on Portlock Street in Lafayette. [rec. doc. 10].

### Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obligated to evaluate the complaint and dismiss it without service of process, if it is frivolous,  malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

---

[4] Plaintiff submitted an ARP grievance on August 5, 2009. He advised that he had complained to Nurse Broussard about chest pains and "short wind." He requested, "that I be more treated and not be give more medication at night . . ." and, "that I be awarded damages for pain and suffer . . . ." In response, corrections officials advised, "Mr. Benjamin you are getting medical care.  If you do not want to take your medication you need to see the doctor to discontinue it."  [rec. doc. 11, p. 3].

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

Plaintiff has filed an original complaint, an amended complaint and exhibits. He has clearly stated his best case and there is no need to permit further amendment.

## 2. Medical Care

It is unclear whether plaintiff was a convicted prisoner or a pretrial detainee when he was incarcerated at the LPCC. The distinction is of no importance, however. The rights of convicted prisoners are governed by the Eighth Amendment; the rights of

-6-

detainees by the Fourteenth.  Either way, in order for a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir.1996) (*en banc*); *Sibley v. LeMaire*, 184 F.3d 481, 489 (5th Cir. 1999);  *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  Plaintiff has not made this showing.

Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) *citing Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985).  The plaintiff must allege and be able to prove that each named defendant has been deliberately indifferent to his serious medical needs or the claim is subject to dismissal as frivolous.  *Graves v. Hampton*, 1 F.3d 315, 319-20 (5th Cir. 1993), *abrogated on other grounds by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000).  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;  thus, the test is "subjective recklessness" as used in the criminal law. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); *See also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).  Deliberate indifference cannot be proven through cumulative group acts, but rather, "each defendant's subjective deliberate indifference, *vel non*, must be examined

separately." *Stewart*, 174 F.3d at 537.

It is not enough to demonstrate that the defendant was negligent, rather it must be shown that the actions were so reckless as to amount to deliberate indifference. *Sibley v. LeMaire*, 184 F.3d 481, 489 (5th Cir. 1999).  Thus, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.  Moreover, the mere fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs.  *See Norton* , 122 F.3d at 292.

Plaintiff was apparently incarcerated at the LPCC for a period of approximately two years.  According to his complaint, amended complaint  and exhibits, plaintiff complained of "chest pains", or discomfort, or otherwise interacted with the corrections or medical staff at LPCC or UMC on the following dates: (1) in August 2007, (2) on January 29, 2009; (3) in April 2009; (4) on June 6, 2009; (5) on June 12, 2009; (6) on July 10, 2009; (8) on August 5, 2009; (9) on September 10, 2009; (10) on September 29, 2009; and (11) on October 1, 2009.

When plaintiff complained of chest pains in August 2007, he was provided blood pressure medication, and, when the medication did not alleviate his pain, he was taken to the hospital for further treatment.  Plaintiff apparently had no complaints between August 2007 and January 2009, and, when plaintiff complained of chest pains on January 29, 2009, although his complaints were initially forgotten, he was ultimately sent to the

hospital for treatment within hours of his complaint.  Plaintiff's complaints in April 2009 were apparently ignored, yet plaintiff did not allege any injury resulting from that circumstance.  Plaintiff's June 6, 2009 complaint was initially mis-diagnosed by the nurse; thereafter, however, when staff attempted to provide plaintiff his blood pressure medication, he refused to take it and instead concealed it under his tongue. On June 12, 2009, plaintiff was seen by a physician and he was cautioned about the possibility of cancer.  On July 10, 2009 plaintiff was examined by a physician at LPCC; plaintiff had no complaints concerning the care he received, but complained instead that the physician and Deputy Lee disrespected him. Plaintiff's August 5, 2009 complaint was attended to – he was escorted to the LPCC Medical Department where his blood pressure was taken and it was determined that it was not high enough to warrant hospitalization. Finally, plaintiff's complaints in September and October 2009 were ignored; yet, plaintiff suffered no ill effects as a result of these incidents.

Plaintiff has not shown that any of the named the defendants have been deliberately indifferent to his serious medical needs.  To the contrary, the record demonstrates that plaintiff was provided with continuous ongoing medication, testing, examination and medical treatment for high blood pressure and his complaints of chest pain during the time he was incarcerated by physicians and nurses at the LPCC, as well as physicians at the University Medical Center.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate

indifference to serious medical needs.  *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997);  *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

To the extent that plaintiff's allegations suggest that he disagrees with the medical care which he has received,  it is well settled that disagreement with what medical care is appropriate does not amount to a constitutional violation.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997);  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *Calloway v. Smith County*, 991 F. Supp. 801 (E.D. Tex. 1998); *Varnado v.  Lynaugh*, 920 F.2d 320, 321 (5th Cir.  1991).  Likewise, incorrect diagnosis or unsuccessful treatment is insufficient to establish deliberate indifference sufficient to state a constitutional claim. *Johnson*, 759 F.2d at 1238-39; *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).

Furthermore, the fact that the medical care given is not the best that money can buy does not amount to deliberate indifference.  *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Norton*, 122 F.3d at 292.  The constitution does not command that prison inmates be given the kind of medical attention that judges would wish to have for themselves;  it prohibits only deliberate indifference to serious medical needs.  *Mayweather*, 958 F.2d at 91; *Ruiz v.  Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982), *amended in part and vacated in part on other grounds*, 688 F.2d 266, 267 (5th Cir. 1982). Although plaintiff apparently requested additional hospital visits to obtain additional information about his condition,

-10-

while desirable, such visits are in no way constitutionally required.

To the extent that plaintiff complains of the delay in finding out that he has a "black spot" on his lung, that claim is without merit. In order to set forth a viable constitutional claim for delayed medical treatment, the plaintiff must show that the named defendants acted with deliberate indifference and substantial harm was occasioned by the delay. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993); *Wesson v. Oglesby,* 910 F.2d 278, 284 (5th Cir. 1990). There is nothing in the record indicating plaintiff suffered substantial harm as a result of any delay. Although plaintiff alleges that he has been advised that this spot could be cancerous, there is no evidence before this court that the spot is in fact cancer. Moreover, there is no evidence that the delayed report of this finding resulted in any substantial harm to plaintiff. Further, as discussed above, the record fails to demonstrate that any named defendant acted with deliberate indifference toward plaintiff's medical needs.

For these reasons, plaintiff's medical care claims – insofar as plaintiff seeks either monetary damages – are frivolous and dismissal on that basis is recommended.

### 3. Requests for Injunctive Relief

In addition to his claims of inadequate or delayed medical care, plaintiff also asserts that unnamed physicians have concealed the true state of his medical condition from him. To remedy this, plaintiff requests that the Court to order the defendants to produce his medical records, to refrain from future concealment, to inform plaintiff of a

"proper diagnosis" and thereafter to provide plaintiff with proper treatment.

As noted above, plaintiff has been released from custody. He may therefore now seek medical care and attention from a physician or health care provider of his own choosing.  Plaintiff  may also request that his medical records be provided to the physician or health care provider he has chosen to treat him.  Court intervention is not necessary for such a request.

Moreover, the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot.  *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002) *citing Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex*., 929 F.2d 1078, 1084 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief); *Holland v.  Purdy*, 457 F.2d 802, 802-803 (5th Cir. 1972) (claim for injunctive relief moot when plaintiff transferred to another institution).

In order for plaintiff's claims to remain viable, he would have to establish either a "demonstrated probability" or a "reasonable expectation" that he would be transferred back to the LPCC or released and then re-incarcerated there. *Oliver*, 276 F.3d at 741 *citing Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).

-12-

Plaintiff has failed to make this showing.  To the contrary, the record reveals that plaintiff is currently residing at a residential address; the mere possibility of plaintiff's re-incarceration or transfer back to the LPCC is too speculative to warrant relief.  *See Herman*, 238 F.3d at 665; *Murphy*, 455 U.S. at 482.  In sum, plaintiff's release from custody has rendered his claims for injunctive relief moot.

Considering the foregoing

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint for damages be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B) and additionally that plaintiff's requests for injunctive relief be **DISMISSED WITH PREJUDICE** as moot.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except**

upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

    In chambers, Lafayette, Louisiana, January 13, 2010.


_____

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE